UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Marvin and Mary Klehr,

Civil No. 01-~~SC~~ CV-482 MJD/FLN

Plaintiffs,

vs.

Charles R. Crafts,
Leonard, Street & Deinard P.A.,
Frederick Morris and Blake Shepard, Jr., and
A.O. Smith Harvestore Products, Inc.,

Defendants.

**AMENDED ORDER**

---

Eric Braaten, Esq., for Plaintiffs.
Lewis A. Remele, Jr., Esq., & Patrick Hickey, Esq., for Defendants.

---

**THIS MATTER** came for a hearing before the undersigned United States Magistrate Judge on August 24, 2001, on Plaintiffs' Motion to Amend the Complaint to Add Claims for Punitive Damages [#10] and Defendants Leonard, Street & Deinard, P.A., Frederick Morris and Blake Shepard, Jr.'s Motion for Summary Judgment [#13]. The parties consented to the Magistrate Judge deciding these motions pursuant to 28 U.S.C. § 636. For the reasons which follow, Defendants' Motion for Summary Judgment [#13] will be granted, and Plaintiff's Motion to Amend the Complaint will be denied as moot.

## I. FINDINGS OF FACT

This case arises out of a previous action in this Court. See Marvin Klehr v. A.O. Smith Corp., 875 F. Supp. 1342 (D. Minn.), affirmed 87 F.3d 231 (8th Cir. 1996), affirmed 521 U.S. 179 (1997). It is undisputed that on or about July 19, 1991, Marvin and Mary Klehr ("Plaintiffs")

FEB 11 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

commenced a lawsuit against A.O. Smith and related entities ("Defendant A.O. Smith") in Scott County District Court, Minnesota, alleging damages arising out of the purchase of a grain silo. See Marvin Klehr & Mary Klehr, v. A.O. Smith Corp., & A.O. Smith Harvestore Products, Inc., Order, Civ. 4-93-822 MJD/FLN (D. Minn., Dec. 21, 1993). Mr. Frederick Morris, Esq., and Mr. Blake Shepard, Jr., Esq., of the Leonard, Street and Deinard, P.A., law firm represented Defendant A.O Smith Corporation and its related entities.

Sometime in early 1993, Mr. Charles Crafts, Plaintiffs' employee/farm hand, contacted Defendant A.O. Smith, claiming to have some information about Plaintiffs' farm operations. See Pls.' Mem. in Opp'n to Defs.' Motion for Summ. J. at 2-5 ("Pls.' Opp'n Mem."). A.O. Smith referred Mr. Crafts to its attorneys, Mssrs. Morris and Shepard, who in turn met with Mr. Crafts at a Perkins Restaurant in Burnsville, Minnesota. Id. While some details of what happened at this meeting are bitterly contested by both parties, it is undisputed that: (1) Mr. Crafts made some statements about the operations at the Klehr farm; (2) Mssrs. Morris and Shepard suggested and Mr. Crafts agreed to keep a diary of events at the Klehr farm; and (3) Mr. Crafts was never paid for the information he provided. See id.; Defs.' Mem. in Supp. of Mot. for Summ. J. at 4-6 ("Defs.' Supp. Mem."). While Plaintiffs contend that Mssrs. Morris and Shepard promised Mr. Crafts substantial sums of money and a job if he would take an active role in the lawsuit, Mr. Crafts' May 21, 2001, deposition reveals that although he thought he would be compensated for his efforts, he was never promised or offered any money. In fact, Mr. Crafts' responses to Plaintiffs' attorney's specific questions show that " there was nothing -- probably nothing specifically said [about any payment]." See Braaten Aff., Ex. E., May 21, 2001, Deposition of Charles Crafts at 59-60.

Following this initial meeting, Mr. Crafts made several telephone calls to Defendant A O

Smith's attorneys to report several events and to describe farming practices at Plaintiffs' farm. See Defs.' Supp. Mem. at 4. Crafts also took photographs and made a videotape to memorialize conditions on the Klehr farm. See Braaten Aff., Ex. E., May 21, 2001, Deposition of Charles Crafts at 125. During a subsequent meeting with Mssrs. Morris and Shepard at Leonard, Street and Deinard, P.A.'s offices, Mr. Crafts converted his approximately one page diary of events into a typed, single-spaced, seven-page document.[1] See id. at 74-80; Pls.' Opp'n Mem. at 7. Sometime in the summer of 1993, after approximately two years of discovery, motion practice and only several weeks before the trial, Defendant A. O. Smith produced Mr. Crafts as a surprise witness. See Pls.' Opp'n Mem. at 3. Mr. Crafts apparently provided an extremely damaging deposition, sworn affidavit and the typed, seven-page diary detailing the day to day operations at Plaintiffs' farm following the initiation of their law suit. Id.

Although Plaintiffs believed that Mr. Crafts' testimony and the representations in his diary were false, they were unable to find any information to discredit his statements before the trial. Id. On August 18, 1993, wanting more time to investigate Mr. Crafts' damaging testimony, Plaintiffs voluntarily dismissed their lawsuit in state court, pursuant to Minnesota Rule of Civil Procedure 41. Id. They never sought a continuance or any other procedural remedy in State Court that would afford them more time to investigate Mr. Crafts' testimony. See Marvin Klehr & Mary Klehr, Order, Civ. 4-93-822 MJD/FLN (D. Minn., Dec. 21, 1993).

Approximately two weeks later, on August 28, 1993, Plaintiffs filed an action in federal

---

[1] There is a genuine issue of fact concerning the degree to which Mssrs. Shepard and Morris participated in the creation of the typed version of the diary. For the reasons discussed below, the Court concludes the issue is not material to the outcome of the litigation.

court, which was substantially identical to the state court action, except that it included a federal RICO claim. Id. On December 21, 1993, this Court awarded Defendant A. O. Smith costs and fees under Fed. R. Civ. P. 41(d) because Plaintiffs' dismissal of the state court action shortly before trial was a "blatant exercise in forum shopping." Id.

On May 19, 1994, Defendant A.O. Smith brought a motion for summary judgment based on the expiration of the statute of limitations. See Pls.' Opp'n Mem. at 4. The Honorable Michael J. Davis, United States District Court Judge, examined Plaintiffs' evidence, found their lawsuit untimely and granted Defendant A.O. Smith's summary judgment motion. See Marvin Klehr, 875 F. Supp. 1342. The Eighth Circuit Court of Appeals and the United States Supreme Court affirmed the dismissal. See id., affirmed 87 F.3d 231 (8th Cir. 1996), affirmed 521 U.S. 179 (1997). None of these courts relied upon or even referred to Mr. Crafts' testimony or diary in rendering their decision. See id. In January 1999, Plaintiffs filed an ethics complaint with the Minnesota Lawyers Professional Responsibility Board. See Remele Aff., Ex C, Determination 4/28/99. On April 28, 1999, following an investigation, the Board determined that discipline was not warranted. Id.

In November 1999, Mr. Klehr located Mr. Crafts and questioned him about his involvement in the case. See Pls.' Opp'n Mem. at 5-6. According to Mr. Klehr, Mr. Crafts had experienced a spiritual reformation and conceded that he perjured himself in the prior action because he was promised a substantial payment for his cooperation against Plaintiffs. Id. Following this revelation, Plaintiffs retained Attorney Eric Braaten who immediately took a sworn statement from Mr. Crafts.

Sometime in July 2000, Plaintiffs filed a Complaint in Scott County District Court, Minnesota, contending that Defendant A .O. Smith's attorneys suborned perjury and presented false evidence in the original action. See Defs.' Supp. Mem. at 6. The Scott County District Court

dismissed the case without prejudice on venue grounds, finding that none of the alleged perjury occurred in Scott County. Id. A few months later in September 2000, Defendants Leonard, Street and Deinard, P.A., Frederick Morris and Blake Shepard, Jr., ("Defendants") filed a Verified Petition for Investigation and Exoneration pursuant to Local Rule 83.6, seeking an investigation of Plaintiffs' allegations of attorney misconduct and fraud on the Court. Id. Because there was no Complaint regarding any alleged misconduct pending, this Court concluded there was no need to investigate the conduct of the lawyers at their own request.

On March 16, 2001, Plaintiffs filed their present action for fraud. In May of 2001 Mr. Crafts' deposition was taken. In it he testified that he thought he would be compensated for his testimony in the prior litigation. When questioned, however, he answered that neither Mr. Morris or Mr. Shepard ever promised him any money, and it is undisputed that he never received any. Moreover, while Crafts told Klehr and Braaten that he had perjured himself in the prior litigation, when questioned, he was unable to identify any of his former testimony which was false. See Braaten Aff., Ex. D., May 21, 2001, Deposition of Charles Crafts at 59-63; [other pages]

In the instant case, Plaintiff seeks damages arising out of Defendants' alleged subornation of perjury and presentation of false evidence in the original state court action. Specifically, Plaintiffs seek compensation for the excess litigation costs incurred as a result of: (1) dismissing their original state court action due to the presentation of Mr. Crafts' fabricated evidence; and (2) re-commencing and appealing the disposition of their suit in Federal Court.

## II. CONCLUSIONS OF LAW

### A. Defendants' Motion for Summary Judgment [#9]

The Supreme Court has held that summary judgment is to be used as a tool to isolate and

dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Hegg v. U.S., 817 F.2d 1328, 1331 (8th Cir. 1987); Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000). Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (holding that the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party. See Anderson, 477 U.S. at 255. However, if the evidence submitted by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. Id. at 248-49. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48. If the opposing party fails to carry that burden, summary judgment should be granted. See Celotex, 477 U.S. at 322; Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000).

Defendants argue that summary judgment is appropriate because Plaintiffs failed to establish at least two of the eleven elements of a fraudulent misrepresentation claim, that is, proximate

causation and falsity of Mr. Crafts' testimony. Specifically, Defendants aver that there is no causal relationship between the presentation of Mr. Crafts' testimony and any of Plaintiffs' allegedly excessive litigation costs. Furthermore, Defendants contend that *assuming arguendo* that Mr. Crafts had been promised compensation for his testimony, it would have had no effect on the underlying case because all the factual information he provided was truthful.

Plaintiffs' opposition to Defendants' Motion for Summary Judgment [#13] centers on their contention that the excess litigation costs suffered as a result of dismissing the original state court action and re-commencing the suit in federal court were directly and proximately caused by Defendants' fraudulent misrepresentations or conduct, that is, the presentation of Mr. Crafts' fabricated evidence and perjured testimony to the Court. In other words, their causation theory is that "but for" the last minute and fraudulent presentation of Mr. Crafts' evidence, they would have never been forced to dismiss the original state court action, re-commence the suit in federal court and incur the excess litigation costs.

To establish a fraudulent misrepresentation claim under Minnesota law Plaintiff must prove: (1) defendant made a representation; (2) the representation was false; (3) the representation concerned a past or present fact; (4) the fact is material; (5) the fact is susceptible of knowledge; (6) the representer knows the fact is false or asserts it as of his own knowledge; (7) the representer intended to induce the other person to act; (8) the other person was induced to act or was justified in acting; (9) that person acted in reliance upon the representation; (10) that person suffered damages; and (11) the misrepresentation was the proximate cause of injury. See Marvin Lumber & Cedar Co. v. PPG Industries, Inc., 223 F.3d 873 (8th Cir. 2000) (citing Western Contracting Corp. v. Dow Chemical Co., 664 F.2d 1097 (8th Cir. 1981)), Hanson v. Ford Motor Co., 278 F.2d 586, 591

(8th Cir. 1960); Nordale, Inc. v. Samsco, Inc., 830 F. Supp. 1263 (D. Minn. 1993); Florenzano v. Olson, 387 N.W.2d, 168, 173 (Minn. 1986); Davis v. Re-Trac Mfg. Corp., 276 Minn. 116, 149 N.W.2d 37 (Minn. 1967); Dooley v. Brattvet, No. C4-93-650, 1993 WL 459820 at *2 (Minn. Ct. App., Nov. 9, 1993). Failure to establish any element is fatal to the entire fraud claim.

The Minnesota Supreme Court has stated that under a theory of fraud, there must exist a causal connection between the misrepresentation and the harm sustained for false misrepresentations to be actionable. See Florenzano, 387 N.W.2d at 173. That is, "[i]t must appear in an appreciable sense that the damage flowed from the fraud as the proximate, and not the remote, cause, and the damage must be such as is the natural and probable consequence of the fraud." See First Bank of Marietta v. Hogge, 161 F.3d 506, 511 (8th Cir. 1998) (citation omitted); see also Fabio v. Bellomo, 489 N.W.2d 241 (Minn. Ct. App. 1992) (providing that proof of causation cannot rest on conjecture and the mere possibility of such causation is not enough to sustain Plaintiff's burden of proof) (citation omitted).

Consequently, to establish proximate cause in the instant case, Plaintiffs must show that Mr. Crafts fabricated false testimony that caused the dismissal of their original state court case, and that they suffered the excess legal costs as a direct result thereof. At the outset, Plaintiffs must establish the falsity of Mr. Crafts' testimony. In viewing the record evidence in the light most favorable to Plaintiffs, this Court concludes that Plaintiffs have not established the falsity of Mr. Crafts' testimony. In fact, this Court's thorough review of Mr. Crafts' deposition transcripts and the record evidence has failed to reveal any support contradicting the substance of Mr. Crafts' original testimony. In reaching this conclusion, this Court also notes that Mssrs. Shepard and Morris' alleged misconduct has not been clearly established, especially since the Lawyers Professional

Responsibility Board determined that disciplinary action was unwarranted.[2]

Assuming *arguendo* that Plaintiffs could establish the falsity of Mr. Crafts' testimony and the attorneys' misconduct, they are unable to show that the allegedly excessive legal costs were proximately caused by the presentation of Mr. Crafts' fabricated testimony. Here, the irrefutable evidence reveals that the United States District Court for the District of Minnesota dismissed Plaintiffs' case on statute of limitations grounds without any reference to, reliance on or presentation of Mr. Crafts' testimony. It is also undisputed that the Eighth Circuit Court of Appeals and the United States Supreme Court did not rely on, or make any reference to Mr. Crafts' testimony in affirming the dismissal of Plaintiffs' case. Additionally, as previously noted in this Court's December 21, 1993 Order, Plaintiffs' purported reason for dismissing their original state court action, that is, being ambushed by Mr. Crafts' fabricated testimony, was without merit because they could have sought a continuance of the state court trial, instead of dismissing their state court action and re-commencing their suit in federal court. See Marvin Klehr & Mary Klehr, Order, Civ. 4-93-822 MJD/FLN, at 8 (D. Minn., Dec. 21, 1993) (finding Plaintiffs' actions "a blatant exercise in forum shopping."). Based on the foregoing, this Court concludes that the excess litigation costs incurred by Plaintiffs as a result of re-commencing and appealing the disposition of their suit in federal court did not "flow" from the alleged fraudulent conduct, but were proximately caused by Plaintiffs'

[2]Although the Board's action was taken before Crafts' purported recantation of his testimony in the prior litigation, in light of Crafts' most recent deposition, the Court has no reason to believe the Board's action would have been any different if it had come after Crafts was located by Klehr in November 1999.

decision to ***voluntarily dismiss*** the original state court action and to shop for a friendlier forum.[3]

Consequently, in viewing all the undisputed evidence in the light most favorable to the Plaintiffs, this Court concludes that there is no causal effect between the alleged fraudulent conduct and Plaintiffs' excessive litigation costs and will order that Defendants' motion for summary judgment be granted.[4]

## III. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Amend the Complaint to Add Claims for Punitive Damages [#10] is **DENIED** as moot.

2. Defendants' Motion for Summary Judgment [#13] is **GRANTED**;

DATED: February 11, 2002

FRANKLIN L. NOEL
CHIEF MAGISTRATE JUDGE

---

[3] Even if Mr. Crafts' testimony was presented to any of the above referenced courts, this Court concludes that Plaintiffs would have probably incurred the same loss since their case was dismissed on statute of limitations grounds. There is nothing in Crafts' testimony which in any way relates to the statute of limitations issue.

[4] In light of this decision, Plaintiffs' Motion to Amend the Complaint to Add Claims for Punitive Damages [#10] is moot and will not be addressed.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.